## Indianapolis, Bloomington and Western Ry. Co.

### v.

## William Murray et al.

1. CUSTOM—*contracts presumed to be made with reference to it.* Where it is the general and long established custom of a railroad company, in delivering freight to connecting lines, to deliver as consignors, a shipper who has been in the habit of shipping over such road, will be presumed to be familiar with that custom, and to contract with reference to it.

2. COMMON CARRIER—*duty of, on delivering goods to other carriers.* A common carrier of goods is not required, in transferring goods to a second carrier, to ship them otherwise than as directed by the shipper, and where the directions given by the shipper as to the shipment omits to give the name of the consignor, the carrier will be guilty of no negligence because it fails to give the name of the consignor, upon delivering the goods to the second carrier.

3. A contract between a shipper and a railroad company obligated the company to transport a lot of hogs to a given point, ready to be delivered to the agent of a connecting line, "consigned, numbered and marked as per margin," to be by the connecting company carried to their place of destination, upon condition that the liability of the contracting company as a common carrier should cease when the hogs arrived at the point

named, ready to be delivered to the next carrier. The name of the consignor was not given in the margin. The hogs were delivered by the company to the connecting company, marked to the consignee, as indicated on the margin of the contract, and were duly delivered to the consignee. Another shipper of hogs, on the same train, from the same point, and to the same destination, accompanied his hogs, and received the pay from the consignee for both lots: *Held*, that the company, having shipped the hogs marked as indicated on the margin of the contract, discharged their whole duty in that regard, and there being no consignor named on the margin referred to, the company was guilty of no negligence which led or tended to induce the consignee to pay the wrong person for the hogs, and were not liable to the owner of the hogs on account thereof.

Appeal from the Circuit Court of McLean county; the Hon. Thomas F. Tipton, Judge, presiding.

Mr. J. C. Black, Mr. L. Weldon, Mr. T. B. Aldrich, and Messrs. McNulta & Aldrich, for the appellant.

Messrs. Hughes & McCart, for the appellees.

Mr. Justice Scott delivered the opinion of the Court:

This record contains no evidence that, under the most favorable view, would support a recovery. The facts may be briefly stated: On the 21st day of August, 1872, appellees delivered to appellant, at Le Roy, in this State, a lot of hogs, which were placed in a double-deck car, No. 2133, belonging to the Cleveland, Columbus. Cincinnati and Indianapolis Railroad Company, and consigned to Sadler, Haven & Co., Pittsburgh. Appellant's railroad terminates at Indianapolis. It is in proof it was the general and long established custom of the company, in delivering freight to connecting lines, to deliver as consignor, and appellees, having been in the habit of shipping over this route, may be presumed to have been familiar with that custom, and contracted in reference to it. Accordingly, on the arrival of the hogs at the transfer station, near Indianapolis, they were delivered to the Cleveland, Columbus, Cincinnati and Indianapolis Railroad Company, with the name of appellant appearing on the way-bill as con-

signor, and also on the check given with the hogs by appellant to the company to whom the transfer had been made. Upon the back of the transfer-check was written, "Acct. Murray Bros.—Sadler, Haven & Co.," but there is so much uncertainty as to when and by whom these words were placed there, that we can attach but little importance to them.

The contract entered into between the parties, when the hogs were placed on board the cars at Le Roy, obligated appellant to transport them to Indianapolis, ready to be delivered to the agent of the connecting line, consigned, numbered and marked as per margin, to be by the connecting company, or companies, carried to the place of destination designated, upon condition appellant's liability as a common carrier should cease when the stock shall arrive at the station named, ready to be delivered to the consignee or the next succeeding carrier, the company to guaranty the freight charges shall not exceed in amount the rates indicated in the contract.

The declaration counts upon this agreement mutually entered into between the parties, and in the second count it is set out *in hæc verba*. Having declared upon it, appellees are estopped to deny it is the contract between them and the company, and was understandingly executed.

It is not claimed appellees were damaged by any act done or omitted by appellant before the stock reached Indianapolis, and the defense might be rested on the single point, appellees had expressly agreed appellant should not be responsible for anything that should occur beyond that station; but the defense may be placed on the broader and more substantial ground, appellant has discharged its whole duty to appellees under the contract, has omitted no common law duty, and if loss has occurred, it must be attributed rather to the negligence of appellees.

The loss is said to have occurred in this way: The hogs were consigned to Sadler, Haven & Co., at Pittsburgh, arriving in due time and in good order. Of this there is no com-

plaint. It appears one Chapman shipped some hogs of his own, from Le Roy, at the same time, in the same train with appellees' hogs, that were consigned to Sadler, Haven & Co. He accompanied the hogs, was on the train with them from Le Roy until they reached their destination, and the evidence tends to show he had the care, to some extent at least, of appellees' hogs. It is certain there was no one else on the train that had any care over them, and whatever attention they did receive was from Chapman. When the hogs reached Pittsburgh, they were delivered to the consignees, Sadler, Haven & Co., and the proceeds of appellees' hogs, as well as his own, were paid over to Chapman. He never accounted to appellees for the money received to their use, and that is the loss complained of.

The negligence charged against appellant is, that it failed to indicate or mark on the way-bill or transfer-check the hogs were consigned to Sadler, Haven & Co., on account of Murray Bros. The way-bill did not indicate who were the consignors, other than that the hogs had been received by the connecting line from appellant. It is apprehended no one understood appellant was really the consignor, or claimed to be.

No other answer need be given to the negligence charged than to say, the contract between the parties did not obligate the railroad company to indicate on the way-bill who were the consignors. Its agreement was, to ship as indicated in the margin, and by reference to the contract it will be seen the consignors' names are not mentioned in the margin. No duty imposed by the contract or by the common law made it obligatory on the company, on transferring the stock to a second carrier, to ship it otherwise than as directed by the shippers. The law imposes no greater diligence upon the carrier, in this regard, than upon the owner of the goods. Had the shippers desired to have the way-bill show who were the consignors, or upon whose account the stock was shipped, they should have caused their names to be written in the mar-

gin when the directions were given. It would be a singularly hard rule to charge the carrier with culpable negligence for omitting to do what the shippers themselves had omitted. When the stock was delivered to the agent of the forwarding company, it was billed in exact accordance with the directions given in the margin of the shippers' contract, and this was the whole duty of appellant in that particular. The hogs were delivered to the consignees named by the owners, by the carriers, without unreasonable delay, and we are at a loss to understand what obligation appellant was under to see that the consignees accounted to the proper parties for the proceeds. It was certainly no part of its duty as a common carrier, and it had not contracted to do so.

The case of *The Chicago and Northwestern Railway Co.* v. *Ames*, 40 Ill. 249, cited by counsel, may be distinguished from the case at bar in principle and in its facts. There, the judgment was maintained on the ground of the negligence of the company's station agent at the place of delivery. in placing the charges on the plaintiff's stock in the same bill with that of another party, thus indicating to the consignee that all the stock belonged to that third party. It was through the negligence of the company's clerk, in making out the bills, that the consignee paid the proceeds to the wrong party, whereby the same became wholly lost to the plaintiff, and a recovery was permitted to stand. But that is not this case. Had appellant done anything that would have indicated to the consignees the stock belonged to Chapman, then this case would be within the principle of that decision. Such is not the case. The company did nothing that could have misled the consignees. The fact the way-bill, as was the general custom, and must have been known to all the principal shippers and others doing business with the railroad companies, may have shown appellant was the consignor, did not authorize the consignees to pay the money realized from the sale of the hogs, to Chapman. It did not even tend to mislead them in that direction.

The wrongful payment made to Chapman by the consignees, if it was unauthorized, as between the shippers and the carrier, must be attributed to the negligent conduct of the former. Whether the consignees acted with due caution, is a question not presented by this record, and upon which we refrain from expressing any opinion.

The hogs were placed in the custody of the carrier, without any one being sent along with them, and no notice whatever was given to the consignees of the shipment. It was the reasonable duty of the shippers either to put some one in charge to protect their interests or to have given notice, by telegram or letter, to the consignees. Perhaps more specific directions on the shipping contract would have answered the same purpose. It was negligence to omit all these reasonable precautions, and the loss that ensued must fall on the party in fault.

In this view of the case, it will not be necessary to consider the errors assigned on the instructions. No verdict that could be rendered for appellees, on this evidence, could be permitted to stand.

The judgment of the circuit court will be reversed.

*Judgment reversed.*